# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# (MIDDLE DIVISION)

**JOE VAN BUNCH, SR.,**

    **PLAINTIFF,**

**CIVIL ACTION NO.:**

**V.**

**EQUIFAX INFORMATION SERVICES, LLC,**

*JURY DEMANDED*

    **DEFENDANT.**

## COMPLAINT

COMES NOW the plaintiff, Joe Van Bunch, Sr. ("Plaintiff") by and through his undersigned counsel, and with knowledge as to his own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. (Fair Credit Reporting Act or FCRA).

2. "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011).

3. Congress made the following findings when it enacted the FCRA:

> **(1)** The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> **(2)** An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> **(3)** Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> **(4)** There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).  Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).  Accordingly, "[t]he FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

4. "Mixed files" create a false description of a consumer's credit history.

5. A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.  More specifically, a mixed file "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F.Supp. 361, 362 (N.D. Tex. 1991)[1].

6. More recently, the New York Attorney General defined a mixed file as credit file information that is mixed with that of another consumer.[2] *See also*   http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

---

[1] Experian Information Solutions, Inc. is formerly known as TRW, Inc.
[2] See http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited November 30, 2016.

7. Mixed files are not a new phenomenon. The consumer reporting agencies have been on notice of the existence of mixed files for over thirty (30) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

8. No less than three Circuit Courts of Appeal have held a consumer reporting agency violates § 1681e(b), and may be found to have willfully violated the FCRA, when it mixes a consumer's file with another consumer.

9. Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers or date of birth, or both.

10. Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

11. Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

12. For decades, the FTC has specifically warned consumer reporting agencies to review their procedures when a mixed file case occurs.

13. In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW

because of their failure to comply with the FCRA including the mixing of consumers' files.

14.   In the 1990's numerous state Attorney Generals, including Alabama, filed a enforcement actions lawsuit against Equifax because of its failure to comply with the FCRA, including the mixing of consumers' files.

15.   In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states.  Equifax agreed it would maintain reasonable procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street address, zip code, year of birth, any generational designation, and social security number) for matching and identification purposes.

16.   In 1994, Equifax signed a Consent Order with the FTC.  Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to mixed files.

17. Similarly, the Mississippi Attorney General recently settled an FCRA enforcement action against Equifax. Mississippi Attorney General Hood stated:

> There are few documents more important than credit reports to borrowers, students, homeowners, tenants, job candidates and service members. Unfortunately, these corporations put their business interests ahead of the best interests of Mississippians. These corporations were too busy making money and listing debt that they didn't bother to take the time to delete errors or verify whether the debts were correct. Even worse, consumers had to fight tooth and nail to get these significant errors corrected. When Mississippi families were denied loans due to these errors and omissions, it was almost impossible for them to get a live person on the phone. When they finally reached a live person, it was even more difficult to get the errors or omissions corrected on just one credit report, much less the other two. omissions corrected on just one credit report, much less the other two.[3]

18. Defendant is aware of Federal Trade Commission and state attorney general enforcement actions[4] concerning or related to mixed files.

19. In 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes. The jury awarded Ms. Thomas

---

[3] http://www.ago.state.ms.us/releases/attorney-general-jim-hood-announces-that-experian-transunion-and-equifax-will-overhaul-credit-reporting-practices-and-end-deceptive-marketing-in-mississippi/ Last visited November 19, 2016.

[4] Including a recent government enforcement action settled May 20, 2015. See http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx Last visited May 29, 2015.

$5 million in punitive damages and $300,000 in actual damages. Despite the verdict, Trans Union continues to mix consumers' files with other consumers' files.

20. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

21. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* D. Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

22. Prior to this lawsuit, Equifax knew about the *Thomas*, *Williams* and *Miller* verdicts.

23. Notwithstanding, Equifax continues to be sued hundreds of times a year wherein a consumer alleges that Equifax violated the FCRA.

24. In the regular course of business, Equifax maintains a list of lawsuits filed against it, and the lists are readily accessible to said defendant.

25. Courts have ordered consumer reporting agencies to produce list of other lawsuits in other FCRA actions. *See Montelongo v. Trans Union, LLC*, Case No. 2:14-cv-04375-GAM (June 22, 2015); *Valenzuela v. Equifax*, 2015 WL 1097315 (D. Ariz. Mar. 5, 2015)(holding consumer reporting agency must "produce any and all complaints (including administrative complaints filed with the FTC, litigation filed in any state or federal court, or complaints it is aware of that were filed by any consumer with the Better Business Bureau) against it in the last 5 years raising claims under the FCRA, generally."); *Calderon v. Experian Info. Solutions, Inc.*, Case No. 1:11-cv-00386-EJL (D. Idaho June 18, 2012)(citing *Howley v. Experian Info. Solutions, Inc.*, case No. 09-241 (D.N.J. Jan. 16, 2009).

26. Despite federal law, Congressional mandates, federal and state government enforcement actions, and hundreds of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

27. The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry.

28.     Equifax reported more than $2.66 billion in operating revenue in its annual report for year ending in 2015.[5]

## JURISDICTION & VENUE

29.     This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

30.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

31.     Plaintiff Joe Van Bunch, Sr. ("Plaintiff") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

32.     Defendant Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.

---

[5] http://files.shareholder.com/downloads/ABEA-32806R/1801692852x0x882810/CC30F45C-8BF7-4814-8A29-A7CE1D85EDCA/15-1002_2015_Annual_Report_Interactive_PDF_FINAL_032116.pdf Last visited October 11, 2016.

Equifax disburses such consumer reports to third parties of contract for monetary compensation.

## FACTUAL ALLEGATIONS

33. Equifax prepared and issued credit reports concerning Plaintiff that include inaccurate information. The inaccurate information includes, but is not limited to a judgment in favor of CitiFinancial, a collection account in favor of ERC and personal identifying information (hereinafter referred to as "the inaccurate information").

34. The judgment does not belong to Plaintiff

35. The judgment belongs to a different consumer.

36. The ERC account does not belong to Plaintiff.

37. The ERC account belongs to a different consumer.

38. Equifax prepared and credit reports with the inaccurate information and provided the credit reports to third parties.

39. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages.

40. Plaintiff's actual damages also include economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket

expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

### COUNT ONE – VIOLATION OF THE FAIR CREDIT REPORTING ACT
**(Negligent Noncompliance with FCRA)**

41. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

42. Equifax negligently failed to comply with the requirements of the FCRA.

43. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

44. Plaintiff requests fees pursuant to 15 U.S.C. § 1681o(a).

### COUNT TWO – VIOLATION OF THE FAIR CREDIT REPORTING ACT
**(Willful Noncompliance with FCRA)**

45. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

46. Equifax willfully failed to comply with the requirements of the FCRA.

47. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

48. Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

49. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendant as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury; and
2. Attorney's fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorney's fees and costs.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL  35203
Telephone: (205) 206-6718
Facsimile:  (205) 208-9632
Email: MicahAdkins@ItsYourCreditReport.com